

CIVIL COMPLAINT FORM TO BE USED BY A *PRO SE* PRISONER

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Michael Williams  #49780-054
**Full Name of Plaintiff**     **Inmate Number**

v.

~~United States of America~~
MR. Bradley
**Name of Defendant 1**

Miss Bodge
**Name of Defendant 2**

Miss Brandt
**Name of Defendant 3**

MR. Helms
**Name of Defendant 4**

MR. Sykes
**Name of Defendant 5**

(Print the names of all defendants. If the names of all defendants do not fit in this space, you may attach additional pages. Do not include addresses in this section).

Civil No. 1:21-CV-0577
(to be filled in by the Clerk's Office)

(✓) Demand for Jury Trial
(__) No Jury Trial Demand

FILED
SCRANTON
MAR 30 2021
PER _____
DEPUTY CLERK

I. NATURE OF COMPLAINT

Indicate below the federal legal basis for your claim, if known.

___ Civil Rights Action under 42 U.S.C. § 1983 (state, county, or municipal defendants)

✓ Civil Rights Action under <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971) (federal defendants)

✓ Negligence Action under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346, against the United States

## II. ADDRESSES AND INFORMATION

### A. PLAINTIFF

WILLIAMS, MICHAEL
Name (Last, First, MI)

49780-054
Inmate Number

United States Penitentiary Hazelton
Place of Confinement

P.O. Box 2000
Address

Bruceton Mills, WV 26525
City, County, State, Zip Code

Indicate whether you are a prisoner or other confined person as follows:

___ Pretrial detainee
___ Civilly committed detainee
___ Immigration detainee
___ Convicted and sentenced state prisoner
✓ Convicted and sentenced federal prisoner

### B. DEFENDANT(S)

Provide the information below for each defendant. Attach additional pages if needed.

Make sure that the defendant(s) listed below are identical to those contained in the caption. If incorrect information is provided, it could result in the delay or prevention of service of the complaint.

Defendant 1:

BRADLEY
Name (Last, First)

WARDEN
Current Job Title

U.S.P. CANAAN
Current Work Address

WAYMART, PA 18472
City, County, State, Zip Code

Defendant 2:
BODGE
Name (Last, First)

S.I.S. Lieutenant
Current Job Title

U.S.P. CANAAN
Current Work Address

WAYMART, PA 18472
City, County, State, Zip Code


Defendant 3:
BRANDT
Name (Last, First)

S.I.S. Technician
Current Job Title

U.S.P. CANAAN
Current Work Address

WAYMART, PA 18472
City, County, State, Zip Code


Defendant 4:
HELMS
Name (Last, First)

S.I.S. Lieutenant
Current Job Title

U.S.P. CANAAN
Current Work Address

WAYMART, PA 18472
City, County, State, Zip Code


Defendant 5:
SYKES
Name (Last, First)

Correctional Officer
Current Job Title

U.S.P. CANAAN
Current Work Address

WAYMART, P.A. 18472
City, County, State, Zip Code

## III. STATEMENT OF FACTS

State only the facts of your claim below. Include all the facts you consider important. Attach additional pages if needed.

A. Describe where and when the events giving rise to your claim(s) arose. — USP CANAAN, May 5, 2019 to Feb. 18, 2020. — Due process violation/False imprisonment/intentional infliction of emotional distress. On May 5, 2019 I was placed in the Dry cell. I gave (4) bowel movements, (3) urine analysis. All which turned up negative. "See Attachment"

B. On what date did the events giving rise to your claim(s) occur?

Beginning May 5, 2019 and ending Feb. 18, 2020.

C. What are the facts underlying your claim(s)? (For example: What happened to you? Who did what?)

A threat assessment was conducted after approximately (1) month. After (4) months, on September 11, 2019 plaintiff was given a incident report. On September 18, 2019, incident report was dismissed. The aforementioned threat assessment was ordered by S.I.S. Lieutenant Bodge and conducted by S.I.S. Miss Brandt after approximately (1) month of plaintiff being in the Special Housing unit. On or about the first week of July 2019, the threat assessment was completed and S.I.S. Miss Brandt submitted a Recommendation to the (DSCC) Designation and Sentence Computation Center to have plaintiff transferred to another USP. However, DSCC denied the request and ordered her to write plaintiff a incident report. For that was the only way plaintiff could be transferred. On September 11, 2019, plaintiff was given a incident report (see Exhibit "A")... Which plaintiff must point out, was given (2) months after DSCC ordered S.I.S. Miss Brandt to write said incident report and (4) months after plaintiff had already been in the Special Housing unit. "See attached page for further explanation deemed important"

## IV. LEGAL CLAIM(S)

You are not required to make legal argument or cite any cases or statutes. However, state what constitutional rights, statutes, or laws you believe were violated by the above actions. If you intend to assert multiple claims, number and set forth each claim in separate paragraphs. Attach additional pages if needed.

No person shall be held to answer or be deprived of life, liberty or property without due process of the law. Clearly, my Fifth Amendment constitutional rights were trampled upon from the beginning when the "Dry Cell" came up negative back in May 5th through May 9th of 2019. We are all suppose to be equal before the law and are entitled without any discrimination to equal protection of the law. The S.I.S. at USP Canaan apparently do not feel that way, because they set and follow their own set of rules. However, the law says, no one shall be held guilty of any penal offense, and is to be presummed innocent until proven guilty according to the laws of this land. I had not been found guilty of violating any federal rules or regulations. Still, I was subjected to the same type of punishment as a guilty individual. "See attached page for further explanation".

## V. INJURY

Describe with specificity what injury, harm, or damages you suffered because of the events described above.

Intentional infliction of emotional distress. "See attachments for further explanation".

## VI. RELIEF

State exactly what you want the court to do for you. For example, you may be seeking money damages, you may want the court to order a defendant to do something or stop doing something, or you may be seeking both types of relief. If you are seeking monetary relief, state your request generally. Do not request a specific amount of money.

Damages, $1,300.00 per each day spent in SHU. Compensation for loss of employment ($75.00 per month) and up to $5,000,000.00 per each month (9 total months) spent in the Special Housing Unit for pain and suffering. "See Attachment".

## VII. SIGNATURE

By signing this complaint, you represent to the court that the facts alleged are true to the best of your knowledge and are supported by evidence, that those facts show a violation of law, and that you are not filing this complaint to harass another person or for any other improper purpose.

Local Rule of Court 83.18 requires *pro se* plaintiffs to keep the court informed of their current address. If your address changes while your lawsuit is being litigated, you must immediately inform the court of the change in writing. By signing and submitting the complaint form, you agree to provide the Clerk's Office with any changes to your address where case-related papers may be served, and you acknowledge that your failure to keep a current address on file with the Clerk's Office may result in dismissal of your case.

*Michael William*
Signature of Plaintiff

March 4, 2021
Date

## III. Statement of Facts - Continuation

A. Plaintiff's Due Process Rights were violated due to the fact that #11 of the incident report states that staff became aware of incident on September 10th, 2019. However, the body of the incident report which has all the allegations and assumptions that plaintiff had contraband was all from May 5 through May 9, 2019. On September 18, 2019, I was given a hearing and the incident report in question was dismissed due to the fact that no contraband had ever existed period, and Plaintiff's Due Process Rights were violated. The only USP Canaan rule that was broken, was a simple kiss. For which Plaintiff was sanctioned for a #407 & 409. Further, in 99% of the Federal Prisons we are allowed to have a kiss and embrace at the beginning and at the end of the visit, according to the program statement.

C. Moreover, after the DHO dismissed this alledged incident report, Plaintiff was still held in the SHU. Thereafter, S.I.S. Miss Brandt still resubmitted another transfer request to DSCC for Plaintiff to be sent to the CMU (controlled management unit). Once again, DSCC returned the transfer order requesting more information. When Plaintiff ask Unit Manager Kurilla why he did not tell Plaintiff about this. He said it was not "<u>Prevalant</u>".

## IV. Legal Claims - Continuation

Plaintiff's due process rights were clearly violated after the "Dry Cell" turned up negative. Then thereafter, Plaintiff was still placed in the SHU. Moreover, after the incident report was dismissed, Plaintiff was still falsely imprisoned in the SHU for no apparent reason. Again, after (8) months, DSCC denied the transfer and Plaintiff was still held in the SHU being punished after not being found guilty of any Federal Rules or any Federal Regulations pertaining to the alleged introduction of illegal contraband into USP Canaan. Instead of releasing Plaintiff into general population, S.I.S. Lieutenant Helms falsified documents (see Exhibit "B") in order to circumvent the system and place a threat assessment on the Plaintiff. In doing this underhanded act, he committed defamation of character against Plaintiff. Which, if given the opportunity Plaintiff will prove by providing affidavits as well as testimony from the individuals who were interviewed by LT Helms that he falsified these documents and in the process, defamed Plaintiff. Lieutenant Helms should be held accountable for his actions so he may not continue to believe that he is above the law.

## V. INJURY - CONTINUATION - Pg #1

(A) After going through the very degrading, embarrassing, humiliating and unsanitary conditions of the "DRY CELL" for (5) days, Plaintiff was still placed in the SHU. While Plaintiff was in the "DRY CELL", he was subjected to extreme humiliation. For Plaintiffs first (3) meals, he was not allowed the use of a spoon. He was told to "work with what he had". Basically, Plaintiff had no other choice but to use his hands. Furthermore, one Lieutenant and (3) officers observed Plaintiff "Fully Naked" while his feces was being released out of him. Then, Plaintiff was not given any toilet paper until "after" handing over the potty with the feces. Then, he was not given the opportunity to wash up. Even more embarrassing, Correctional Officer Sykes did a full body cavity search (3) times in (5) minutes. After going through the motions (correctly) the first time, Plaintiff was told to do it again. When Plaintiff questioned Officer Sykes about this, he stated; "Because I said so". Plaintiff was told to do it a third time because "Plaintiff gave him a hard time". (← his accusation). This was clearly "Intentional Infliction of Emotional Distress". Under the law of most states, an IIED claim requires a showing that; (1) The defendant acted in a way that is extreme or outrageous for the purpose of causing emotional distress.

V. <u>INJURY</u> - <u>CONTINUATION</u> - Pg #2

Continuation (A) (2) The plaintiff actually suffered severe or extreme emotional distress; and (3) the defendant's conduct caused the emotional distress. Plaintiff's Fourteenth Amendment - Due Process Rights were further violated due to the fact that; strip searches are generally allowed but many courts state that the searches must be related to legitimate penological interests and cannot be excessive or used to harass, intimidate or punish. In <u>JEAN-LAURENT V. WILKENSON</u>, 540 F. Supp. 2d 501 (S.D.N.Y. 2008), for example, one court stated that a second strip search might be unconstitutional, because the inmate was under the constant supervision of guards since the first search. In the instant case, it was (3) searches in (5) minutes! Also, Doctor Mowatt had to "<u>ORDER</u>" the staff to bring the plaintiff water because after seeing the plaintiff's urine in the portable urinal, she came to the conclusion that plaintiff was extremely dehydrated. Plaintiff provided (3) clean urinalysis and (4) bowel movements, which proved negative results. Still, he was placed in the SHU.

## VI. Relief - Continuation

Authoritative mental health manuals consider solitary confinement a catastrophic stressor. Plaintiff attest that, this justifies his compensation for mental anguish, embarrassment, loss of employment, emotional distress, false imprisonment and severe headaches. When plaintiff suffers from a headache, that triggers his high blood pressure. Which in turn can lead to a heart attack. (Plaintiff suffers from a heart condition and takes medication for said condition). Plaintiff wishes to point out that during his (25) years of incarceration, he has been through a lot. However, never has plaintiff been through so much stress, embarrassment, humiliation, pain and suffering all at once.

| BP-A0288 | INCIDENT REPORT | |
|---|---|---|
| JAN 17 | | FEDERAL BUREAU OF PRISONS |
| U.S. DEPARTMENT OF JUSTICE | | |

Case 1:21-cv-00577-YK   Document 1   Filed 03/30/21   Page 12 of 16   EXHIBIT "A"

## Part I – Incident Report

| 1. Institution: USP CANAAN | Incident Report Number: | | |
|---|---|---|---|
| 2. Inmate's Name: Williams, Michael | 3. Register Number: 49780-054 | 4. Date of Incident: May 5, 2019 | 5. Time: 9:40 AM |
| 6. Place of Incident: USP Canaan Visiting Room | 7. Assignment: SHU Unassigned | 8. Unit: C-1 | |
| 9. Incident: Conducts which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another greatest severity prohibited act | | 10. Prohibition Act Code (s): 199 – Most likely 111A | |

11. Description of Incident: (Date: September 10, 2019   Time: 4:00 PM   Staff became aware of incident)

On September 9, 2019, an SIS investigation was completed. This investigation determined that inmate Williams, Michael, #49780-054, introduced an unknown substance believed to be narcotics into the USP Canaan visiting room on May 5, 2019 during a social visit with Claudia Baena. This conclusion is supported by staff's observations in the USP Canaan visiting room, control center statements, video surveillance.

On May 5, 2019, at approx. 6:20 a.m., the Control Center #2 officer, Officer Alvaro, reported he received an incoming telephone call from an outside line. The male on the phone stated to that inmate Williams, Michael, #49780-054, will be on a visit today and will be receiving drugs. The male hung up the telephone before Control Center staff was able to obtain more information from the male. Control Center staff notified Operations Lieutenant and Visiting Room staff.

On May 5, 2019, at approx. 9:40 a.m., the Visiting Room #1 officer, Officer LoSapio, reported he observed inmate Williams, Michael #49780-054, violate visiting room policy. Officer LoSapio observed inmate Williams "Open Mouth Kissing" his visitor, Claudia Baena. Officer Losapio escorted inmate Williams out of the visiting room to the body scanner. Inmate Williams was then placed on dry cell status with negative results.

On September 9, 2019, inmate Williams was interviewed in the SHU. Williams stated he was sorry for the "Open Mouth Kiss." Williams stated he was aware of the visiting room policy of no open mouth kissing. Williams apologized for his actions. Williams stated he never open mouth kissed his visitor. Williams stated at no time did a foreign object be put into his mouth from his visitor. According to video surveillance, inmate did in fact have his mouth open.

A review of video surveillance recordings made from the Visiting Room cameras on May 5, 2019, was conducted. This review shows that on May 5, 2019, at 9:40:20 a.m., Williams approaches his visitor Claudia Baena, places his arms around her waist and kisses her on her mouth. At 9:40:23 a.m., Williams has his mouth open and an orange foreign object could be seen passing from Claudia Baena's mouth to Williams's mouth. At 9:40:24 a.m., Williams places his head and buries his face in Claudia's left shoulder. At 9:40:27 a.m., Williams kisses Claudia again on the mouth. At 9:40:33 a.m., Williams places his head on Claudia's right shoulder having a difficult time swallowing the foreign object. At 9:40:38 a.m., inmate Williams conclude their embrace and visiting room staff arrives to remove Williams from the visiting room. Following this incident inmate Williams received an incident report for Code 407 – Violating Visiting Regulations, and Code 409 – Unauthorized Physical Contact.

| 12. Type Name/Signature of Reporting Employee: N. Brandt / SIS Technician  [signature] | 13. Date and Time: September 10, 2019 / 5:00 PM | |
|---|---|---|
| 14. Incident Report Delivered to Above Inmate by (Type Name/Signature):  CWeaver / CW— | 15. Date Incident Report Delivered: 9/11/19 | 16. Time Incident Report Delivered: 700 Am |

## Part II – Committee Action

17. Comments of Inmate to Committee Regarding Above Incident

INSTRUCTIONS: All items outside heavy rule are for staff use only. Begin entries with the number 1 and work up. Entries not completed will be voided by staff.
DISTRIBUTE: ORIGINAL-Central File record, COPY-1-DHO, COPY-2-Inmate After UDC Action; COPY-3-Inmate within 24 hours of Part I Preparation.

WD                              Prescribed by P5270                              Replaces BP-S288 of AUG 11

Summary:

On May 5, 2019, at approximately 9:40 a.m., the Visiting Room staff observed inmate Williams, Michael, #49780-054, embrace his visitor, (b)(6); (b)(7)(C) and was observed having an "open mouth kiss" with his visitor. During the "open mouth kiss" inmate Williams visitor was observed passing a foreign object orange in color, from her mouth to inmate Williams mouth and ingesting it. A review of video surveillance revealed, inmate Williams was observed having a difficult time swallowing the orange foreign object. Inmate Williams was removed from the visiting room body scanned and placed on dry cell.

On January 10, 2020, inmate Williams, Michael, #49780-054 was denied for Communications Management Unit Placement, due to the fact inmate Williams was not discovered in direct possession of narcotics. On January 10, 2020, inmate Williams was ordered to leave SHU and return to General Population because the investigation had been completed, and inmate Williams stated he cannot return to General Population due to losing the narcotics and now owes debt, and now fears he will be assaulted. A Threat Assessment has been initiated to determine if inmate Williams should be transferred to another institution due to his refusal to return to General Population at USP Canaan.

Inmate Data:



Name: 49780054 - WILLIAMS, MICHAEL
Role: Suspect
Security Level: HIGH
Facility Arrival Date: 4/17/2009
Charges:

Age: 46   Race: BLACK
Custody Level: IN
Projected Release Date: LIFE

| Description | Sentencing District |
|---|---|
| 18:1962 RICO; 18:1963 RICO CONSPIRACY; 18:1959 VIOLENT CRIME IN AID OF RACKETEERING; 21:853 NARCOTICS CONSP.; 21:848 MURDER WHILE ENGAGED IN NARCOTICS CONSP.; 18:924 POSS. OF FIREARMS IN RELATION TO VIOLENT CRIME; 21:982 MONEY LAUNDERING | NEW YORK, SOUTHERN DISTRICT |

STGs:

ESCAPE HISTORY

CIMs:

SEPARATION

Victim Statements:

**No information was found for the given criteria.**

Assailant Statements:

**No information was found for the given criteria.**

**Other Statements:**

Date: 5/5/2019 12:00 PM                                Location:

Interviewer: Written                                    Title:

Interviewee: (b)(6), (b)(7)(C)                          Title: SIS TECHNICIAN

On May 5, 2019, Senior Officer (b)(6)(b)(7)(C) submitted a memorandum (b)(6)(b)(7)(C) stated on May 5, 2019, while working as Visiting Room #1 officer, he observed inmate WILLIAMS open mouth kissing his visitor (b)(6)(b)(7)(C) violating visiting room policy. (b)(6)(b)(7)(C) stated he escorted inmate WILLIAMS out of the visiting room to the body scanner in R&D (b)(6)(b)(7)(C) stated the body scanner produced negative results.

Date: 5/5/2019 12:00 PM                                Location:

Interviewer: Written                                    Title:

Interviewee: (b)(6), (b)(7)(C)                          Title: SIS TECHNICIAN

On May 5, 2019, Senior (b)(6)(b)(7)(C) submitted a memorandum (b)(6)(b)(7)(C) stated on May 5, 2019 (b)(6) working as the Control Officer #2, he received a telephone call from (b)(6) the outside line. The male on the phone stated to (b)(7)(C) that WILLIAMS will be on a visit today and will be receiving drugs (b)(6)(b)(7)(C) stated the male hung up the phone before he was able to obtain any more information.

Date: 1/10/2020 5:30 PM                                Location: Housing Units, General Population

Interviewer: (b)(6), (b)(7)(C)                          Title: LIEUTENANT

Interviewee: 48623053 (b)(6), (b)(7)(C)

On January 10, 2020 inmate (b)(6)(b)(7)(C) was interviewed in the B-1 Unit. (b)(6)(b)(7)(C) is a highly influential inmate from the Geographical Area of New York. (b)(6)(b)(7)(C) stated he knows WILLIAMS (b)(6)(b)(7)(C) WILLIAMS went to the Special Housing Unit in May of 2019 for possible introduction of narcotics in the Visiting Room. (b)(6)(b)(7)(C) stated he was under the impression WILLIAMS requested Protective Custody, due to being in the Special Housing Unit for an extended period of time. (b)(6)(b)(7)(C) stated due to inmates in General Population thinking WILLIAMS requested Protective Custody, WILLIAMS is no longer welcome in General Population at USP Canaan. (b)(6)(b)(7)(C) stated if WILLIAMS were to return to General Population at USP Canaan, he will likely be assaulted.

Date: 9/9/2019 2:30 PM                                 Location: Housing Unit, Special (SHU)

Interviewer: (b)(6), (b)(7)(C)                          Title: SIS TECHNICIAN

Interviewee: 49780054 - WILLIAMS, MICHAEL

On September 9, 2019, inmate WILLIAMS was interviewed in the SHU. WILLIAMS stated he was sorry for the "Open Mouth Kiss." WILLIAMS stated he was aware of the visiting room policy of no open mouth kissing. WILLIAMS apologized for his actions. WILLIAMS stated at no time did a foreign object be put into his mouth from his visitor. WILLIAMS refused to answer any further questions about the incident in the visiting room.

Date: 1/10/2020 4:30 PM                                Location: Housing Unit, Special (SHU)

Interviewer: (b)(6), (b)(7)(C)                          Title: LIEUTENANT

Interviewee: 49780054 (b)(6), (b)(7)(C)

On January 10, 2020 inmate WILLIAMS was interviewed in the Special Housing Unit. WILLIAMS was advised that his SIS Investigation had been completed, and he can now return to General Population at USP Canaan. WILLIAMS stated he had been in the Special Housing Unit since May 2019. WILLIAMS stated due to being in the Special Housing Unit for an extended period of time, he now fears for his safety, due to his inability to repay his debts for the narcotics that was supposed to be introduced into the Visiting Room. WILLIAMS stated he owes money to inmates from the Geographical Area of New York, and due to his inability to pay, he fears that he will be assaulted.

EXHIBIT "B" PAGE #3

Date: 1/10/2020 5:40 PM                                    Location: Housing Units, General Population
Interviewer: (b)(6), (b)(7)(C)                             Title: LIEUTENANT
Interviewee: 91773054  (b)(6); (b)(7)(C)

On January 10, 2020 inmate (b)(6), (b)(7)(C) interviewed in the C-1 Unit. (b)(6), (b)(7)(C) is a highly influential inmate from the Geographical Area of New York. (b)(6), (b)(7)(C) stated he heard WILLIAMS was placed in the Special Housing Unit for trying to introduce narcotics into the visiting room. (b)(6), (b)(7)(C) stated he heard WILLIAMS owes money for the narcotics he attempted to introduce. (b)(6), (b)(7)(C) stated WILLIAMS is in bad standings with the inmates from New York, due to his failure to pay debts. (b)(6), (b)(7)(C) stated if WILLIAMS were to return to General Population at USP Canaan, he will likely be assaulted.

Factual Findings:

| Item Number | Evidence Number | Item Description | Recovered From Location |
|---|---|---|---|
| CAA-19-00677 | CAA-19-0603 | 1 DVD containing 1 video clip of Introduction of Contraband in the Visiting Room involving inmate Williams, Michael, #49780-054 | SIS Office |

A review of video surveillance recordings made from the Visiting Room cameras on May 5, 2019, was conducted. This review shows that on May 5, 2019, at 9:40:20 a.m., Williams approaches his visitor (b)(6), (b)(7)(C) places his arms around her waist and kisses her on her mouth. At 9:40:23 a.m., Williams has his mouth open and an orange foreign object could be seen passing from (b)(6), (b)(7)(C) mouth to Williams's mouth. At 9:40:24 a.m., Williams places his head and buries his face in (b)(6), (b)(7)(C) left shoulder. At 9:40:27 a.m., Williams kisses (b)(6), (b)(7)(C) again on the mouth. At 9:40:33 a.m., Williams places his head on (b)(6), (b)(7)(C) right shoulder having a difficult time swallowing the foreign object. At 9:40:38 a.m., inmate Williams conclude their embrace and visiting room staff arrives to remove Williams from the visiting room.

Michael Williams # 49780-054
United States Penitentiary Hazelton
P.O. Box 2000
Bruceton Mills, WV 26525

RECEIVED
SCRANTON
MAR 30 2021
PEH _____
DEPUTY CLERK

"Legal Mail"

To:
Office of the Clerk
United States District Court
Middle District of Pennsylvania
235 North Washington Avenue
P.O. Box 1148
Scranton, PA 18501-1148





"Legal Mail"

